BIXENMAN v. HALL, ETC.

[No. 20,664. Filed November 22, 1967. Rehearing denied January 2, 1968. Transfer granted December 31, 1968. 242 N. E. 2d 837.]

*William F. Carroll* and *Carroll & Bielefeld,* of Crown Point, and *Philip M. Cagen* and *Cagen & Anderson,* of Valparaiso, for appellant.

*George W. Douglas, Winfield L. Houran, Douglas, Douglas & Douglas,* and *Chester, Clifford, Hoeppner & Houran,* of Valparaiso, *Ronald T. Spangler,* and *Spangler, Jennings, Spangler & Dougherty,* of Gary, and *William H. Eichhorn,* and *Lawyer, Schroer & Eichhorn,* of Hammond, for appellees.

BIERLY, J.—This action, commenced in the trial court by appellant, is for damages for the death of appellant's child.

It appears from the record that appellant's son, who was 13 years of age, was riding his bicycle in a southerly direction on the left side of Court Street, contrary to § 57-2109 Burns' Anno. Stat. (1965 Replacement). Court Street is intersected by Crestview Lane to form a "T" intersection. Crestview traffic at the intersection is controlled by a yield sign for Court Street. Appellee Alice S. Hall was driving in a westerly direction along Crestview as she approached the yield sign. On the northeast corner of the intersection there is a house or dwelling surrounded by a hedge approximately a distance of three to five feet from the eastern edge of Court Street. As she approached the intersection appellant's son was riding down South Court Street alongside appellee, Merritt C. Busselberg, who was driving a truck owned by appellee, Lake County Agricultural Society, in the right lane going south.

As appellee approached the intersection she looked to the right and saw appellee's truck; then she looked left and saw some automobiles coming from the south. She decided that she had enough time to make her right turn so she eased out into the intersection, and as she did so, she saw appellant's son and slammed on her brakes. The boy was either thrown under the wheels of the truck or driven against the side of the truck.

Trial was had by jury, which, by order of the court, returned directed verdicts for appellees, Busselberg and Lake County Agricultural Society, and a verdict for the remaining appellee, Alice B. Hall. Judgment was entered accordingly.

Appellant assigns as error the trial court's action in over-ruling his motion for a new trial which contained the following specifications:

"1. The verdict is contrary to law.

"2. Error of law occurring at the trial in this:

"A. The Court erred in sustaining a motion for directed verdict filed by defendant Merritt C. Busselberg at the close of plaintiff's evidence.

"B. The Court erred giving defendant Merritt C. Busselberg's Instruction No. A at the close of plaintiff's evidence, by which the jury was peremptorily instructed to return a verdict finding for defendant Merrit C. Busselberg.

"C. The Court erred in sustaining a motion for directed verdict filed by defendant Lake County Agricultural Society at the close of plaintiff's evidence.

"D. The Court erred in giving defendant Lake County Agricultural Society's Instruction No. 3 at the close of plaintiff's evidence, by which the jury was peremptorily instructed to return a verdict for defendant Lake County Agricultural Society.

"E. The Court erred in giving each of the Instructions Numbered 2, 3, 12, 15, 20, 23, 24, 29, 32 and 33, at the request of defendant Alice B. Hall, which instructions were specifically objected by the plaintiff out of the presence of the jury and before argument.

"F. The Court erred in refusing to give each of the Instructions Numbered 5, 6, 7, 10, 12, 13, 14, 15, 21 and 22, which were tendered and requested by plaintiff."

Appellant has seen fit to group his various specifications of alleged error into two groups; the first is concerned with the doctrine of last clear chance and the second is concerned with the contributory negligence of a child. Appellant also briefly discusses in a third group, alleged errors in certain other instructions.

His first errors specified are divisions A, B, C and D, in his motion for a new trial which are concerned with peremptory instructions.

The general rule in this regard is stated in *Reynolds, Admtrx. etc.* v. *Langford* (1961), 241 Ind. 431, 172 N. E. 2d 867, wherein our Supreme Court found that:

> "The trial court may properly give a peremptory instruction to find for the defendant '[w]hen there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant.' *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 680, 122 N. E. 2d 734; *Johnson* v. *Estate of Gaugh, et al.* (1955), 125 Ind. App. 510, 519, 124 N. E. 2d 704; *Vann* v. *Vernon General Ins. Co.* (1956), 126 Ind. App. 503, 133 N. E. 2d 70."

Also, see: *Kampo Transit, Incorporated* v. *Powers* (1965), 138 Ind. App. 141, 211 N. E. 2d 781; *Pennsylvania Railroad Company* v. *Mink* (1966), 138 Ind. App. 311, 212 N. E. 2d 784.

Appellant contends that appellees Lake County Agricultural Society and Busselberg were negligent in that the latter, as agent for the former, failed to blow his horn or give decedent any warning of his presence, and secondly that he failed to reduce his speed or alter his course in such a way as to avoid striking decedent, or so as to avoid making his truck a backstop for the Hall auto.

We have reviewed the evidence most favorable to the appellant on the question of appellees Busselberg and Lake County Agricultural Society, and conclude there to be a total lack of same on the question of their negligence. Thus, the trial court was not in error when it directed a verdict in their favor.

Appellant's next contention of error is the trial court's refusal to give two instructions regarding last clear chance

with respect to appellee Hall. The substance of appellant's Instruction No. 7 was that any negligence on decedent's part would ordinarily bar recovery, but there is an exception known as last clear chance. The elements of this doctrine are that both persons are negligent, the injured person, through his own negligence has placed himself in a position of peril, and the person causing the injury discovers the injured person's position of peril, and has the physical and mental ability to avoid the injury but negligently fails to exercise ordinary care to do so, and this injury proximately resulted from this failure.

Instruction No. 10 was similar to No. 7, except that it did not specifically list the elements of the doctrine as did No. 7.

In order that the doctrine of last clear chance apply, the appellee Hall had to discover or become aware of decedent's position of peril, and must have had the physical and mental ability to avoid injury to the decedent but negligently failed to exercise ordinary care to do so. See: *Stallings* v. *Dick* (1965), 139 Ind. App. 118, 210 N. E. 2d 82, and cases cited therein. Appellant set out portions of testimony and depositions to support his argument that the jury should have been instructed on last clear chance.

Mr. Lester Albert Carl testified that:

"At the time, I mean, what I think happened, I think she got excited when she hit the boy and her foot hit the throttle. That is what made the impact as hard as it was."

Witness Helen Carr testified by deposition as follows:

"Q. You mentioned that the first observation you had of the boy, he was on the fender of the car.

"A. Yes.

"Q. Do you recall which fender?

"A. The left front.

"Q. You said it appeared that he bounced. Can you describe that for us, just a little better?

"A. Well, when the car hit him, I believe she must have put on the brakes and then all of a sudden, it darted forth,

and when it darted forth, he came up off a little bit and then she drove it into it again—I mean into the truck—she hit him twice."

The appellee, Hall, testified as follows:

"A.   Well, I went several feet past the yield sign, then stopped, and looked to my right and saw the truck going south, in the southbound lane.  Then I looked north and I saw two cars coming very slowly, north, in the northbound lane.

"Q.   Did you stop a second time?

"A.   Well, after I stopped and looked to the right and to the left, I started to ease out.

"Q.   In other words, you came to a complete stop, somewhere west, or past the yield sign, is that right?

"A.   Yes.

"Q.   And then you started out very slowly, I don't remember the words you used, you started out very slowly making your turn, is that correct?

"A.   Yes.

"Q.   I believe you said, you said five or six miles an hour, was that about your best guess.

"A.   I think so, I was just easing out.

"Q.   All right.  Between the time you started out very slowly, and five or six miles an hour, did you increase your speed any, between that time and the time you came in contact with the truck?

"A.   I may have just started to increase my speed as I was making my turn.

"Q.   Well, what would be your statement, Mrs. Hall, of the highest speed you attained between the time you made the complete stop, just past the yield sign, and the time your car came in contact with the truck?

"A.   I don't think I was going more than ten miles at any time.

"Q.   Not more than ten.

"Q.   You didn't stop a second time, between the time you were at the yield sign and the time you made contact with the truck, did you?

"A.   No. I slammed on my brakes when I saw the boy and swerved.  I don't know if I ever came to after I—we brushed, I don't know.  I can't remember what happened

until I was into the truck; whether I made a complete stop when I slammed on the brakes, I don't know.

"Q. In other words, to the best of your recollection, Mrs. Hall you were going five or six miles an hour, you saw the boy, maybe as high as ten, is that right? Your saw the boy, you slammed on your brakes, is that correct?

"A. Yes.

"Q. And were the brakes working?

"A. Yes.

"Q. They were in good condition?

"A. Yes.

"Q. And you kept the brakes on all the way until, all the way down until you hit the truck, is that right?

"A. I don't know. After the bicycle and the car brushed and I had turned, I don't remember what happened until I actually stopped at the truck."

Appellant states that from the above evidence, it is shown that there "may have been a sudden acceleration on the part of the appellee Hall." That "appellee Hall struck Dean two separate times." That "appellee Hall was negligent in failing to see Dean Bixenman approaching the intersection," and that "appellee Hall had a clear chance to avoid killing the boy simply by keeping her foot on the brake."

Appellant further suggests that:

"The only logical conclusion, in view of the force with which she struck the truck, is that after seeing the boy and applying her brakes, she became panic stricken and put her foot on the accelerator, just as suggested by the Witness Lester Albert Carl."

It appears to us that the question of appellee Hall's negligent failure to see the decedent approaching the intersection would have no bearing on the question of last clear chance. As was stated in *Heldt* v. *Thompson* (1927), 86 Ind. App. 270, 157 N. E. 60, and cited in the *Stallings* case, *supra*:

"The last clear chance contemplates a *known* peril which can be avoided by due care, not a peril which might have been known by the exercising of due care. In other words,

it is the negligent failure to avoid discovered peril that makes applicable the rule of last clear chance." (Emphasis supplied).

It also appears obvious that appellee Hall did not have the requisite physical and mental ability to avoid the boy's death. See: *Ewing* v. *Biddle* (1966), 141 Ind. App. 25, 216 N. E. 2d 863.

Nor was the necessary time element present, for in order that the doctrine apply, the peril must be known ". . . in time to clearly afford an opportunity to avoid injuring the one in peril. . . ." *Terre Haute, etc., Traction Co.* v. *Stevenson* (1920), 189 Ind. 100, 105, 123 N. E. 785.

We are of the opinion that the trial court did not err in refusing to instruct the jury on the doctrine of last clear chance.

Appellant's next proposition of error concerns specifications E and F of his motion for a new trial, *supra*.

Basically his argument could be summarized as follows: Under Indiana law, the contributory negligence of a child is to be determined in light of what a child of like age, intelligence and experience would have done under the same or similar circumstances.[1] However, Indiana also has repeatedly invoked the negligence per se doctrine, which purports to attach strict liability to one who has violated a statute, such violation being the proximate cause of the injury complained of.

The appellant then maintains that:

"The effect of appellee Hall's instruction 12, 3 and 2, is to take away any significance which the jury might have attached to Dean's age, intelligence, and experience. These instructions reject the legal proposition that a child must be judged by a child's standards. What difference would it

---

1. Appellant cites the following to sustain this proposition: *"Cleveland Railway Co. v. Miles* (1904), 162 Ind. 646, 70 N. E. 985; *Indianapolis Railways v. Williams* (1945), 115 Ind. App. 373; 59 N. E. 2d 586, 34 Indiana Law Journal p. 511, *Contributory Negligence of Children in Indiana: Capacity and Standard of Care."*

make if Dean were 13? or 10? -or even 4 years of age? What difference would it make if he were above or below normal intelligence and understanding? The offensive instructions told the jury that Dean was negligent per se because he was in the wrong traffic lane, violating a statute. Because of these instructions, his age, intelligence and experience were never considered by the jury."

The three Instructions and the objections made thereto are set out as follows:

## "INSTRUCTION NO. 12

"A statute of the State of Indiana, in full force and effect at the time of the accident in controversy, provided as follows:

"Driving to the left of center of roadway further limitations.— (a) No vehicle or bicycle shall at any time be driven to the left side of the roadway under the following conditions:

'When approaching within 100 feet of or traversing any intersection. . . .'

"If you find from fair preponderance of the evidence in this case at the time of the accident in controversy the Plaintiff's decedent failed to obey the provisions of this statute, then such conduct on the part of the Plaintiff's decedent would constitute negligence."

Objected to by the appellant as follows:

"For the reason that said instruction is mandatory, and invades the province of the jury, and calls for the jury to exclude and permits consideration, the matter of age of plaintiff, which was established as 13, his training, intelligence, and experience, and requires that the same standard of care be applied as would be applicable of an adult."

## "INSTRUCTION NO. 3

"You are instructed that, even though you should believe that Dean Bixenman was ignorant of the statutory provisions concerning the manner of the operation of his bicycle on public highways, it was no excuse for a violation of such statute."

Objected to by the appellant as follows:

"For the reason that the same invades the province of the jury in that it deprives them of the right to determine whether the conduct of plaintiff's decedent was negligent in view of his age, experience and education; and applies an erroneous principle of law in that in the majority of the states passing upon the question of a mere statutory violation is but prima facie evidence and the minority, lack of experience of the person charged with the violation of the statute is a matter for the consideration by the jury in determining whether or not his conduct is negligent. That the test properly for the jury would be—did the plaintiff conduct himself in a manner reasonable and prudent for persons similarly situated; and in consideration of the persons the jury are required to take into consideration, minority, capacity, state of education and general ability."

## "INSTRUCTION NO. 2

"You are instructed that the fact that the plaintiff's decedent, Dean Bixenman, was a boy a little over 13 years of age, does not excuse him from complying with all of the statutes of the State of Indiana pertaining to the operation of bicycles on public highways."

Objected to by the appellant as follows:

"That the Instruction takes away from the jury the matter of determining the negligence of plaintiff's decedent in the light of his age, wisdom, and experience as set forth in numerous decisions of the Indiana Supreme and Appellate Courts and as enunciated by the restatement of the law of torts. Plaintiff further objects to said Instruction for the reason that the same is mandatory. Plaintiff further objects to said Instruction for the reason that the same singled out one particular element."

The trial court did give appellant's Instruction No. 9, which stated:

"If you find from a preponderance of the evidence that at the time of his death, Dean E. Bixenman, was a child 13 years of age, you are instructed that he was bound only to exercise such care for his own safety as would ordinarily be exercised by children of like age, knowledge, judgment and

experience under the facts, circumstances and conditions disclosed by all of the evidence herein."

Upon a review of this issue, we find that it has been the subject of much litigation which advocates a special exemption for children under the statutory violation cases. See the following: 174 A. L. R. 1171, 26 S. Cal. L. Rev. 335, 37 Texas L. Rev. 255, 3 Vand. L. Rev. 145, 48 Kentucky L. J. 601.

However, we believe that under Indiana law, no such special treatment for children exists. Appellant points out that in *Herrin* v. *Stark* (1964), 136 Ind. App. 135, 198 N. E. 2d 397, an instruction similar to those present in the case at bar was approved, but not contested on the same grounds as in the case at bar. However, in the case of *Ewing* v. *Biddle* (1966), 141 Ind. App. 25, 216 N. E. 2d 863 (Petition for transfer denied), our court stated that:

"To give legal sanction to the operation of automobiles, bicycles or any other motor driven vehicle by minors or teenagers, with less than ordinary care, for the safety of others, would be impractical as well as dangerous. If the rule were otherwise, a state of uncertainty would result, because then it would be a question for juries and courts to determine whether minors of various ages would be held to a different standard of care than adults and all others.

"In this modern day we must take judicial notice of the hazards of traffic, and travelers must not be forced to anticipate conduct other than that expected of all ordinary citizens. It would be impossible to know if all cars, bicycles and other vehicles were operated by adults, a minor twenty years old, fifteen years old or ten years old. Since there is no exception in the statutes which exempts anyone from the provisions thereof, we feel that the law applies equally to all."

We have reviewed the final portion of appellant's brief and find no error in regard to the instructions contained therein. The majority of this portion covers alleged errors which were covered in the first and second portions of appellant's argu-

ment. We are of the opinion that the trial court fairly instructed the jury and committed no reversible error; and we are of the opinion that the judgment of the trial court should be affirmed.

Judgment affirmed.

Pfaff, C. J., concurs;

Cook, J., concurs in result;

Smith, J., concurs in result only, with concurring opinion.

## CONCURRING OPINION

Smith, J.—I concur in the result reached in the opinion of Judge Bierly in this case. However, I feel that there are some issues raised which have not been clearly and succinctly discussed and answered in the opinion.

I will not belabor this opinion with a recital of the facts and the issues for the reason that the opinion written by Judge Bierly has covered them completely and correctly.

As discussed in Judge Bierly's opinion, the appellant has combined his various specifications of alleged errors into two groups; the first is concerned with the doctrine of last clear chance, and the second is concerned with the contributory negligence of a child. Appellant has further set out a third grouping of errors, which pertains to the giving of certain instructions.

The appellant contends that the trial court erred in refusing to give two instructions on the theory of the last clear chance doctrine as the same pertains to appellee Hall.

The appellant maintains that the trial court erred in refusing to give Plaintiff's Instruction No. 7 and No. 10.

Plaintiff's Instruction No. 7 reads in part as follows:

"Therefore, if you find from a preponderance of all the evidence that Dean E. Bixenman, by his own negligence, placed himself in a position of peril, and thereafter a defendant in his action discovered or became aware of Dean E. Bixenman's position of peril, and had the physical and

mental ability to avoid the injury which caused his death, but negligently failed to exercise ordinary care to do so; and that Dean E. Bixenman was killed as a proximate result of such failure; then you may find that the original negligence of Dean E. Bixenman, if any, does not defeat a recovery by his father, plaintiff herein, *against either defendant who in such manner failed to exercise a last clear chance to avoid the injury and death complained of by the plaintiff.*" (Emphasis supplied)

Plaintiff's Instruction No. 10 reads in part as follows:

"If you find from a preponderance of the evidence, if any, that Dean E. Bixenman was negligent, and by his own negligence placed himself in a position of peril, but was unaware of his peril in time to extricate himself, and if you further find that either Mrs. Hall or Mr. Busselberg discovered Dean's peril in sufficient time to avoid injuring him *by the exercise of due care,* then you may apply the doctrine of 'last clear chance' and find for plaintiff and against either or both of said defendants whom you believe, upon your consideration of all the evidence, *failed to exercise such due care.*" (Emphasis supplied)

The appellee maintains that these instructions are clearly erroneous because each of the instructions informed the jury that they could find against either defendant who in such manner failed to exercise due care under the "last clear chance" doctrine; that these instructions would certainly mislead the jury for the reason that the appellees, Lake County Agricultural Society and Merritt C. Busselberg, were relieved of any liability by the court at the close of plaintiff's evidence, and that the appellee, Alice B. Hall, was the only party-defendant at the conclusion of the trial of this cause; that said instructions were not correct and were clearly erroneous under the issues that existed at the conclusion of the submission of this cause.

To support this proposition the appellee has cited the following case: *Hamling, Executor, et al.,* v. *Hildebrandt, et al.,* (1948), 119 Ind. App. 22, 81 N. E. 2d 603.

The court in the Hamling case, at page 27, said as follows:

"(4) The appellants complain of the court's refusal of two instructions tendered by them which embraced the idea that on the issues of fraud and of duress the will was valid, and verdicts for the defendants must be returned on each of those issues. As we have said, those issues were removed from the consideration of the jury by the court's instruction 2A. The tendered instructions were, therefore, superfluous, and if given they would have been confusing in that the giving of them along with 2A would have told the jury to return a verdict on issues which had been withdrawn from its consideration."

It is my opinion that this position of the appellee has some merit.

In further answer to the appellant's argument that the trial court erred in failing to give these instructions, the appellee maintains that the doctrine of "last clear chance" is not applicable to the facts in this case for the reason that the appellee, Alice B. Hall, did not have notice of the perilous position of the Bixenman boy, and did not have an opportunity both physically and mentally to avoid the accident. In support of this proposition, the appellee has cited the following cases: *Carroll Ewing* v. *Alice Biddle* (1966), 141 Ind. App. 25, 216 N. E. (2d) 863; *John Stallings, Gerald Evans,* v. *Joseph Dick, Jr.* (1965), 139 Ind. App. 118, 210 N. E. 2d 82.

The evidence in the case at bar reveals that the appellee, Hall, came up to the intersection in a very slow and cautious manner, looked to the right and saw a truck approaching from the right, and then looked to the left and saw two motor vehicles approaching the intersection from a southerly direction, and, when she saw that she had plenty of time to enter the intersection and to proceed in a northerly direction on Court Street, she started to make her right turn into Court Street and was traveling from six to ten miles an hour when she first saw the Bixenman boy operating his bicycle in a southerly direction on Court Street. The bicycle was traveling at the approximate speed that the truck was traveling and on

the wrong side of Court Street. She then applied her brakes and swerved her motor vehicle. She did not have either the physical or mental ability to avoid the accident after she discovered Dean Bixenman. From an examination of all the exidence, there is no evidence that the appellee, Hall, had sufficient notice of the illegal operation of the Bixenman boy's bicycle in time to have avoided the collision herein, or that she negligently failed to avoid the collision after actually seeing the presence of the Bixenman boy on the wrong side of the street. Clearly the evidence discloses that when the appellee, Hall, first saw the Bixenman boy traveling in a southerly direction on the wrong side of the highway, he was directly in front of her and she could not have avoided striking him.

The appellant contends that the appellee, Hall, was negligent *in failing to see Dean Bixenman, approaching the intersection.* It is my opinion, however, that this argument is fallacious due to the fact that under the doctrine of "last clear chance" the appellee *must have actual knowledge of the presence of Dean Bixenman, and then negligently fail to avoid injuring him.*

Our court stated, in the case of *John Stallings, et al.,* v. *Joseph Dick, Jr., supra,* the following:

". . . The last clear chance doctrine in Indiana contemplates a peril on the part of the plaintiff which is known by the defendant or defendants in time to avoid the injury. *Heldt* v. *Thompson* (1927), 86 Ind. App. 270, 271, 157 N. E. 60; *Button* v. *Pennsylvania R. Co.* (1944), 115 Ind. App. 210, 219, 57 N. E. 2d 444; *Snyder* v. *N. Y. Cent. R.R. Co.* (1936), 101 Ind. App. 258, 269, 194 N. E. 796. . . ."

". . . The court then stated:

'. . . The last clear chance contemplates a known peril which can be avoided by due care, not a peril which might have been known by the exercise of due care. In other words, it is the negligent failure to avoid discovered peril that makes applicable the rule of last clear chance.' "

". . . In *Button* v. *Pennsylvania R. Co., supra,* this court held:

'. . . The practical import of the doctrine of last chance is that a negligent defendant is held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril, had in fact a later opportunity than the plaintiff to avoid the injury.

'. . . It is obvious that the doctrine of last clear chance has no place in a controversy in which (1) the plaintiff was not negligent, and (2) the defendant had no actual knowledge of the plaintiff's peril.'

"The doctrine of last clear chance is discussed fully and completely in 21 I.L.E., *Negligence*, § 92, pp. 351, 352. This section of I.L.E. states as follows:

'For the doctrine of last clear chance to be applied it is essential that the defendant should have had knowledge of plaintiff's peril and the ability and opportunity to avert the injury. The doctrine of last clear chance affects the cases in which the injured person is guilty of negligence and has no place in a controversy in which plaintiff was not negligent. It applies where plaintiff negligently puts himself in a place of danger from which he cannot extricate himself after he becomes aware of the danger, or where he could have extricated himself had he known of the danger but failed to do so because he was unconscious of the peril.

'In order to invoke the application of the last clear chance doctrine, defendant must have had knowledge of plaintiff's danger or situation of peril and of the helpless condition of plaintiff and thereafter failed to exercise reasonable care to avoid harming him. The knowledge of plaintiff's peril or danger, which will bring a case within the doctrine, . . . must be actual knowledge, and the mere fact that by the use of ordinary care and diligence the peril might have been known to the person who inflicted the injury does not bring a case within the doctrine.' "

It is my opinion, therefore, from an examination of all the evidence in this case, the court did not commit reversible error in refusing to give Appellant's Instructions No. 7 and No. 10.

The next alleged error set out under heading II of appellant's argument is error of the trial court in giving Defendant's Instructions No. 2, No. 3 and No. 12, and in refusing to give Plaintiff's Instructions No. 6, No. 12 and No. 21.

Defendant's Instruction No. 2 reads as follows:

"You are instructed that the fact that the plaintiff's decedent, Dean Bixenman, was a boy a little over thirteen years of age, does not excuse him from complying with all of the statutes of the State of Indiana pertaining to the operation of bicycles on public highways."

Defendant's Instruction No. 3 reads as follows:

"You are instructed that, even though you should believe that Dean Bixenman was ignorant of the statutory provisions concerning the manner of the operation of his bicycle on public highways, it is no excuse for a violation of such statute."

Defendant's Instruction No. 12 reads as follows:

"A statute of the State of Indiana, in full force and effect at the time of the accident in controversy, provided as follows:

'Driving to the left of center of roadway further limitations.— (a) No vehicle or bicycle shall at any time be driven to the left side of the roadway under the following conditions: When approaching within 100 feet of or traversing any intersection. . . .'

"If you find from a fair preponderance of the evidence in this case that at the time of the accident in controversy the Plaintiff's decedent failed to obey the provisions of this statute, then such conduct upon the part of the Plaintiff's decedent would constitute negligence. Burns' 1940 Repl., Sec. 47-2014. *Gulley* v. *Ham* (1947), 117 Ind. App. 593; 73 N. E. 2d 188, 190."

Plaintiff's Instruction No. 6, as refused by the court, reads as follows:

"If you find from a preponderance of the evidence, if any, that at the time of the matter here in controversy, Dean E. Bixenman was 13 years of age, and that he was operating his bicycle on the left side of the road in violation of a statute or statutes of the State of Indiana, such violation of itself would not prevent a recovery by the plaintiff herein, if you further find that at said time Dean E. Bixenman was exercising the same degree of care for his own safety as

would ordinarily be exercised by children of like age, knowledge, judgment and experience under the facts, circumstances and conditions disclosed by all of the evidence herein."

Plaintiff's Instruction No. 12, as refused by the court, reads as follows:

"A person riding in a public street or highway on a bicycle is required to use ordinary care to avoid being injured by coming in contact with cars or vehicles operated or driven in the street. He also has a right to presume that persons in charge of cars or other vehicles will use ordinary care to avoid injuring him.

"If you find from a preponderance of the evidence that Dean Bixenman was killed while in the operation of his bicycle at the time and place referred to in the complaint, and that at said time and place he was using such care as should be ordinarily expected from a boy of like age, knowledge and experience to protect himself from injury by other vehicles being operated in a reasonably careful manner, then you may find that Dean Bixenman discharged his full duty and was not guilty of contributory negligence."

Plaintiff's Instruction No. 21, as refused by the court, reads as follows:

"The court instructs the jury that before you may find plaintiff barred from recovery by reason of violation of the statute requiring vehicles to be operated on the right hand side of the read you must also find that a child of similar age, intelligence, and experience would not have operated his bicycle on the left hand side of the road."

The appellant has grouped his argument to include a consideration of all the above recited instructions under heading II of his argument. It is my opinion that under the facts alleged in the case at bar it is a violation of statutory law for a minor to violate the rules of the road in the operation of his bicycle. In other words, the General Assembly of the State of Indiana specifically sets out what the operator of a bicycle is to do when operating the same on the public highways, and sets out by statute what the conduct should be for

all persons regardless of age. *Rentschler* v. *Hall* (1946), 117 Ind. App. 255, 69 N. E. 2d 619; *Carroll Ewing* v. *Alice Biddle* (1966), 141 Ind. App. 25, 216 N. E. 2d 863; *Carl Smith* v. *City of Indianapolis* (1964), 136 Ind. App. 616, 199 N. E. 2d 723.

The appellant admits that Dean Bixenman, at the time of the collision in controversy, was entering an intersection on the wrong side of the road, or against traffic, contrary to statute. *The appellant then attempts to justify this illegal action by claiming that Dean Bixenman was only thirteen years of age and that the jury should have given some justification for his violation of this statute due to his age.* However, from a careful reading of the statute in question it appears the General Assembly did not qualify the duties placed on operators of bicycles according to age—it set up the norm of care for everyone. The court in the *Rentschler* case stated as follows:

> "(2)   The courts of many states have said that the violation of a statutory duty constitutes negligence 'as a matter of law.' . . . and our Supreme Court, in *Jones* v. *Cary,* supra. [*Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944] said that for a driver to drive to the left of the center of the highway in violation of a statute, without any excuse or reason, constituted negligence 'as a matter of law.' Thus, the expressions 'per se' and 'as a matter of law' have been regarded as substantially interchangeable. We realize it is not every correct statement of the law as announced by the courts that may properly find its way into an instruction to the jury. But we feel that the ordinary jury would probably not understand the meaning of 'per se,' and in our opinion the shade of meaning between the two expressions is not sufficiently great, when embodied in an instruction, as to be prejudicial, and we so hold. . . ."

It is my opinion that the appellee, Hall, is entitled to have the jury instructed on her theory of the case. See *David Herrin, b/n/f* v. *John K. Stark, Jr.* (1964), 136 Ind. App. 135, 198 N. E. 2d 397.

This court in numerous cases has held that there are no exceptions as to age or otherwise in the violation of such statute. This court has decided in numerous cases the question that statutes governing the operation of motor vehicles upon highways applies to all operators of motor vehicles including bicycles, and that no exception should be made as to age.

The court in the case of *Carroll Ewing* v. *Alice Biddle, supra,* stated in part as follows:

> "The legislature in enacting the above statutes referred to all operators and drivers of motor vehicles. The intent to include all persons is determined in some degree by the fact that the provisions of the motor vehicle code are applied to all persons as set forth in Burns' § 47-2102, which reads as follows:
>
> '. . . Every person riding a bicycle upon a roadway shall be subject to the provisions of this act applicable to the driver of a vehicle, . . .'
>
> "In this modern day we must take judicial notice of the hazards of traffic, and travelers must not be forced to anticipate conduct other than that expected of all ordinary citizens. It would be impossible to know if all cars, bicycles and other vehicles were operated by adults, a minor twenty years old, fifteen years old or ten years old. Since there is no exception in the statutes which exempts any one from the provisions thereof, we feel that the law applies equally to all.
>
> ". . . we believe that all must be bound by the 'rules of the road.'"

In summary, it is my opinion, that it is not necessary to determine whether the violation of the statutory regulation in question by Dean Bixenman constituted negligence "per se," negligence as a "matter of law," "prima facie evidence," or "a presumption of evidence," because, regardless of what it may be designated, any such act of negligence can be justified and rebutted. However, there is nothing in the record evidence in the case at bar that reveals any justification or excuse on the part of Dean Bixenman for violating the statute

in question. The appellant, however, maintains that justification or excuse stems from the fact that Dean Bixenman was a minor, thirteen years of age. This fact alone offers no justification for the violation. See, *Rentschler* v. *Hall, supra; Carroll Ewing* v. *Alice Biddle, supra;* and *Carl Smith* v. *City of Indianapolis, supra.*

It is, therefore, my opinion that the trial court did not commit reversible error in giving Defendant Alice B. Hall's Instructions No. 2, No. 3, and No. 12, and in refusing to give Plaintiff's Instructions No. 6, No. 12 and No. 21.

I have examined the evidence most favorable to the appellant concerning the liability of appellees Busselberg and Lake County Agricultural Society, and I am of the opinion that there is a total lack of evidence on the question of their alleged negligence. Therefore, the trial court was not in error when it directed the verdict in their favor.

I also have considered the arguments of appellant set forth under heading III of his brief, in which the appellant maintains that the trial court committed error in giving Defendant's Instruction No. 12 and No. 20, and the failure of the trial court to give Plaintiff's Instruction No. 14, and I can find no reversible error in the giving or refusing to give said instructions.

I am of the opinion that the trial court fairly instructed the jury in this cause; that the case was fairly tried; that the court properly overruled appellant's motion for a new trial and that appellant has failed to set out any error in such ruling.

Judgment affirmed.

Smith, J.

NOTE.—Reported in 231 N. E. 2d **530.**